IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GERALD D. HYMAN, JR. | : | |
| Petitioner | : | |
| v | : | Civil Action No. WDQ-06-50 |
| WARDEN LISA J. HOLLINGSWORTH | : | |
| Respondent | : | |

oOo

## MEMORANDUM

The above-captioned Petition for Writ of Habeas Corpus, filed January 9, 2006, alleges that the Federal Bureau of Prisons (BOP) wrongfully prohibited him from participating in an Intensive Confinement Center (ICC) boot camp program, thwarting the Court's recommendation at sentencing. Paper No. 1. Respondent has filed a Motion to Dismiss or For Summary Judgment. Paper No. 7. Petitioner has filed a Response in Opposition and the matter is now ripe for this Court's review. Paper No. 11. Upon review of the papers filed, this Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, the petition will be denied.

Background

Petitioner pled guilty to violation of 21 U.S.C. § 841, distribution of 50 grams or more of cocaine base, and was sentenced to serve 78 months by this Court on June 24, 2004. Paper No. 7 at Ex. 1, Attachment A. In sentencing Petitioner this Court made the following recommendations:

1. That the defendant participate in any substance abuse program for which he may be eligible.

2. That the defendant participate in the Intensive Confinement Center (Boot Camp) program when and if determined eligible.

        3.       That the inmate be placed in a facility consistent with his security level that is as close as possible to: Maryland.

*Id*.

On January 14, 2005, the BOP announced it would no longer be offering the ICC boot camp program based on the cost of the program in light of its ineffectiveness. Paper No. 7 at Ex. 2. Petitioner never entered the program prior to it's rescission, but asserts that had he been allowed to participate in the program he would have received the benefit of a sentence reduction. He claims that the decision to no longer fund the program violated his due process rights and increased the sentence imposed by this Court in violation of the Ex Post Facto clause. In addition he asserts that the BOP violated the federal administrative procedure act when the policy change was implemented. He now seeks, as a remedy, a six-month reduction in his sentence.

Under 18 U.S.C. §4046 (a) the BOP "may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30 months, if such person consents to that placement." Under 28 C.F.R. § 524.32, "[a]n inmate who completes or has completed the institution-based component of an intensive confinement center pilot program, who maintains successful participation in a community-based program, and has a period of supervised release to follow is eligible for up to a six month reduction in sentence if staff confirm that the inmate has met the requirements of 28 C.F.R. §§ 524.31(a)(1)(i),(2), (3) and (4)."[1]

---

[1] 28 C.F. R. § 524.31 (a) specifies criteria for placement in an ICC boot camp:

(a) Eligibility for consideration of placement in the intensive confinement center program requires that the inmate is:

Due Process Claim

By virtue of a valid criminal conviction and his subsequent legal confinement, a prisoner loses his expectation of liberty.  *See Meachum v. Fano*, 427 U.S. 215, 224  (1976).  In order to invoke pre-deprivation procedural due process protections, a prisoner must first establish that he has been subjected to "atypical and significant hardship . . .  in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U. S. 472, 484 (1995).  The Constitution itself does not create a protected liberty interest in the expectation of early release.  *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U. S. 1, 7 (1979); *see also Jago v. Van Curen*, 454 U.S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest).

---

    (1)(i) Serving a sentence of more than 12, but not more than 30 months (*see* 18 U.S.C. 4046), or
    (ii) Serving a sentence of more than 30, but not more than 60 months, and is within 24 months of a projected release date.

    (2) Serving his or her first period of incarceration or has a minor history of prior incarcerations;

    (3) Is not serving a term of imprisonment for a crime of violence or a felony offense:

        (i) That has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or
        (ii) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or
        (iii) That by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or
        (iv) That by its nature or conduct involves sexual abuse offenses committed upon children.

    (4) Appropriate for housing in minimum security;

    (5) Physically and mentally capable of participating in the program;

    (6) A volunteer.

(b) Placement in the intensive confinement center program is to be made by Bureau staff in accordance with sound correctional judgment and the availability of Bureau resources.

Petitioner has failed to establish that he had a constitutionally protected liberty interest in entering the ICC boot camp program.  This Court's recommendation for his participation in the program was contingent upon the determination of his eligibility for participation.  Petitioner was not guaranteed the opportunity to participate in the program absent a finding of eligibility by the BOP.  If the BOP had not ended the program, Petitioner's sentence of 78 months would have disqualified him from participation.  *See* 18 U.S.C. § 4046(a).  Additionally, Petitioner was not sentenced to serve his sentence in the boot camp program, rather he was committed to the custody of the United States Marshal for service of his 78 month term in the BOP.  The determination of where the sentence is to be served is within the discretion of the BOP.  *See* 18 U.S.C. §3621(b).

Petitioner's alleged entitlement to a sentence reduction is even more tenuous.  A sentence reduction is only provided under the program guidelines upon successful completion of the program. *See* 28 C.F.R. § 524.32.   Even upon successful completion, however, there is no provision stating that the sentence reduction shall occur, as the decision is left within the discretion of BOP staff.  *Id.*   An inmate's eligibility for participation in the ICC boot camp program, the determination of whether an inmate has successfully completed the program, and the amount, if any, of reduction of sentence earned by successful completion of the program, are all matters left to the discretion of the BOP.

### Ex Post Facto Claim

"To fall within the Ex Post Facto prohibition, a law must be retrospective– that is, it must apply to events occurring before its enactment– and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime."

4

*Lynce v. Mathis*, 519 U.S. 433, 441 (1997).  Petitioner asserts that the discontinuation of the boot camp program is a law which operates to increase the punishment for the crime he committed. Petitioner is mistaken.  The administrative decision[2] to discontinue funding of a correctional program is not a law subject to scrutiny under the Ex Post Facto Clause.  Even if the policy decision were a law, there is no increase in punishment.  Petitioner characterizes the withdrawal of the program as a modification to his sentence, however, no modification has taken place. Petitioner was sentenced to serve 78 months, with a recommendation to be considered for the ICC boot camp program.  Petitioner's sentence is still 78 months; he will not be imprisoned beyond the term imposed by the sentencing court.  *See  Weaver v. Graham*, 450 U.S. 24, 30 (1981) (stating that an ex post facto violation occurs when the legislature "increases punishment beyond what was prescribed when the crime was consummated.").  The BOP has neither altered the definition of Petitioner's criminal conduct nor increased the punishment for his crimes.  The decision whether he will serve any portion of that sentence in the ICC boot camp program was committed to the discretion of BOP officials and will be determined by the future availability of the program and Petitioner's eligibility.

---

[2] Petitioner's claim that the withdrawal of funding for the ICC boot camp program violated the Federal Administrative Procedure Act is without merit.  The statutory authority for creation of the program provides that the BOP "may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30 months." 18 U.S.C. § 4046(a).  The use of the word may in the statutory language invests discretion in the BOP to either establish such a program or to discontinue it.  *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335,346 (2005). Agency decisions to discontinue programs committed to that agency's discretion, are not decisions subject to judicial review under the APA.  *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

Having found no basis for habeas relief in the instant case, the Petition for Writ of Habeas Corpus shall be denied.

June 27, 2006                                         /s/
Date                                          William D. Quarles, Jr.
                                              United States District Judge